**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **OWNERS INSURANCE COMPANY,** | |
| *Plaintiff*, | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:25-cv-00007-TES** |
| **ERICA WILLIAMS**, as Administrator of the Estate of Cameron Williams, deceased**, and** **C. BURTON HOLDINGS, LLC,** | |
| *Defendants*. | |

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

This is a declaratory-judgment action brought pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201. [Doc. 1, ¶ 7]. Through the legal standards that guide summary judgment, Plaintiff Owners Insurance Company ("Owners") seeks a ruling that it doesn't have a duty to defend or indemnify Defendant C. Burton Holdings, LLC, in a lawsuit filed against it in the State Court of Bibb County, Georgia. [*Id.* at ¶ 5].

## BACKGROUND

In that underlying lawsuit, Defendant Erica Williams, acting as the administrator for her late son's estate, sues a 24-hour, self-service car wash owned and operated by C. Burton Holdings, LLC (hereinafter "Burton"), at 1975 Millerfield Road in Macon, Georgia. [Doc. 1-1, ¶¶ 1–3]; [Doc. 22-2, ¶ 18]. Ms. Williams asserts that on September 30,

2023, her son, Cameron Williams, "was present at" the car wash "for the purpose of being a customer of the business" only to fall victim to a drive-by shooting stemming from gang-related violence. [Doc. 1-1, ¶¶ 5–6, 35–36]. The drive-by shooters killed Ms. Williams' son. [*Id.* at ¶ 6]. To recover damages against Burton for negligence-based claims, Ms. Williams sued it in state court on September 6, 2024. [*Id.* at ¶¶ 10–41].

On January 7, 2025, Owners filed a Complaint [Doc. 1] in federal court against Ms. Williams and Burton initiating proceedings to dispel any duty that it must defend or indemnify Burton in the underlying lawsuit. [Doc. 1, ¶ 35]. Why? Well, according to Owners, Burton didn't give them notice of the shooting "as soon as practicable" as required under its commercial insurance policy. [*Id.* at ¶¶ 17–20, 35]. Owners characterizes this declaratory-judgment action as "a straightforward late-notice case." [Doc. 22-1, p. 1]. Ms. Williams and Burton disagree. They contend that Burton's notice to Owners was not, as a matter of law, late, and that even if it was, "notice" is not a condition precedent to coverage. *See generally* [Doc. 23]; *see also* [Doc. 26, pp. 5–10].

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears

the initial responsibility of informing the court of the basis for its motion." *Four Parcels*,

941 F.2d at 1437. The movant may cite to particular parts of materials in the record,

including, "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,' which it believes demonstrate the absence of a

genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[1] "When the *nonmoving* party has the burden of proof

at trial, the moving party is not required to 'support its motion with affidavits or other

similar material *negating* the opponent's claim[]' in order to discharge this 'initial

responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323).

Rather, "the moving party simply may show—that is, point out to the district court—

that there is an absence of evidence to support the nonmoving party's case." *Id.*

(quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide

"affirmative evidence demonstrating that the nonmoving party will be unable to prove

its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party,

who must rebut the movant's showing "by producing . . . relevant and admissible

---

[1] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P.
56(c)(3).

evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2); *see also* n.2, *infra*. However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The nonmovant's evidence is to be believed, and "all

justifiable inferences are to be drawn in his favor." *Id.* at 255. "[I]f a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment." *Sconiers*, 946 F.3d at 1263. It "must hold a trial to get to the bottom of the matter." *Id.*

## APPLICABLE LAW

Easily enough, the parties agree that Georgia law on construction and interpretation of contracts governs the outcome of this declaratory-judgment action. [Doc. 22-1, p 5]; [Doc. 23, p. 4]; [Doc. 26, p. 2]. Under Georgia law, when interpreting an insurance policy, the "cardinal rule" is "to determine and carry out the intent of the parties." *Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n-Risk Mgmt. Fund*, 818 S.E.2d 250, 253 (Ga. 2018). The policy is to be read "as a layman would," and "not as it might be analyzed by an insurance expert or an attorney." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." *Owners Ins. Co. v. Jones*, No. 5:23-cv-92, 2025 WL 1839951, at *3 (S.D. Ga. July 3, 2025) (quoting *U.S. Fire Ins. Co. v. Cap. Ford Truck Sales*, 355 S.E.2d 428, 429 (Ga. 1987)).

If a policy's language is unambiguous, the contract's plain terms must be enforced. *Staton*, 685 S.E.2d at 266. But if the policy is found to be ambiguous, then its provisions are "construed liberally against the insurer and most favorably for the

insured." *Id.* at 265. Georgia courts find an insurance contract ambiguous "only if its terms are subject to more than one reasonable interpretation." *Id.* Courts may not "strain the construction of the policy so as to discover an ambiguity." *Id.* at 265–66. "In other words, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists." *Id.* at 266. If "the language fixing the extent of liability of an insurer is unambiguous and but one reasonable construction is possible, [courts] must expound the contract as made." *Id.*

## POLICY LANGUAGE

Unless otherwise noted, the following is taken from Owners' Statement of Material Facts [Doc. 22-4].[2] The effective period for the commercial general liability insurance policy covering Burton spanned from November 18, 2022, to November 18, 2023. [Doc. 22-4, ¶ 1]. So, the date of the shooting from the underlying lawsuit, September 30, 2023, falls within that period. [*Id.* at ¶ 7]. Included in the policy is a CGL Form—a Commercial General Liability Coverage Form—stating:

> *Various provisions in this policy restrict coverage.* Read the entire policy carefully to determine rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the Named

---

[2] By operation of Local Rule 56, these facts are deemed admitted by Ms. Williams since she has not "specifically controverted [them] by specific citation to particular parts of materials in the record." LR 56, MDGa; *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (discussing consequences for a failure to follow a court's local rules); *Hall-Gordon v. Bibb Cnty. Sch. Dist.*, No. 5:21-cv-00143-TES, 2022 WL 3704917, at *1 (M.D. Ga. Aug. 27, 2022) (discussing consequences for a failure to follow Local Rule 56); *aff'd Gordon v. Bibb Cnty. Sch. Dist.*, No. 22-13286, 2023 WL 8253881, at *1–2 (11th Cir. Nov. 29, 2023); *Mathews v. Walmart, Inc.*, No. 5:22-cv-00397-TES, 2024 WL 3905815, at *2–3 (M.D. Ga. Aug. 22, 2024) (same); *NEIS Acquisitions AUXGA, LLC v. Target Corp.*, No. 5:25-cv-00114-TES, 2025 WL 2898972, at *1 n.1 (M.D. Ga. Oct. 10, 2025) (same).

Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured. *Other words and phrases that appear in quotation marks have special meaning.* Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
1.      **Insuring Agreement**

      **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[*Id.* at ¶ 2 (emphasis added)]; [Doc. 1-2, p. 150 (emphasis added)].

Section IV of the CGL Form discusses "Conditions."[3] [Doc. 22-4, ¶ 3]; [Doc. 1-2, pp. 158–59]. There, the policy requires the insured to provide timely notice of any "occurrence" that may result in a claim. [Doc. 22-4, ¶ 3].

2.      **Duties In The Event Of Occurrence, Offense, Claim or Suit**

      **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

          **(1)** How, when and where the "occurrence" or offense took place;

          **(2)** The names and addresses of any injured persons

---

[3] With respect to this factual assertion by Owners, Burton "does not dispute the policy language quoted in this paragraph." [Doc. 26-1, ¶ 3]. Burton does, however, dispute Owner's "statement that the quoted 'conditions' is a 'condition precedent'" to coverage. [*Id.*]. In its Response [Doc. 26-1] to Owners' Statement of Material Facts, Burton argues that "'[c]ondition precedent' is a legal conclusion asserted by [Owners], and the phrase 'condition precedent' is not contained in the policy." [*Id.*].

and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

[*Id.*]; [Doc. 1-2, p. 159].

Then, under Section V of the CGL Form, the policy supplies "Definitions" for

two of those " *words and phrases that [just] appear[ed] in quotation marks.*" [Doc. 22-4, ¶¶ 2

(emphasis added), 4]; [Doc. 1-2, p. 160]. Relevant here, are three definitions.

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[ . . . ]

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[ . . . ]

**18.**     "Suit" means a civil proceeding in which damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies are alleged.

[Doc. 22-4, ¶ 4]; [Doc. 1-2, pp. 160 ("Bodily injury"); 162 ("Occurrence"); 163 ("Suit")].

## <u>DISCUSSION</u>

When it comes to the overarching question of notice, the policy states that Burton "must see to it that [Owners is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." [Doc. 22-4, ¶ 3]; [Doc. 1-2, p. 159]. It also states that "[i]f a claim is made or 'suit' is brought against [Burton], [Burton] must . . . [i]mmediately record the specifics of the claim or 'suit' and the date received; and . . . [n]otify [Owners] as soon as practicable." [Doc. 22-4, ¶ 3]; [Doc. 1-2, p. 159]. According to Owners, when an insurance policy requires an insured to provide timely notice of an occurrence, and the notice provision is "coupled with a general provision that no action will lie against the insurer unless the insured has fully complied with the terms of the policy, compliance with the notice provision is deemed a condition precedent to coverage." [Doc. 22-1, pp. 6–7 (citing *Progressive Mountain Ins. Co. v. Bishop*, 790 S.E.2d

91, 93–94 (Ga. Ct. App. 2016))].

Notably, however, no one is bringing an action against Owners—as far as this case is concerned. *See* [Doc. 26, p. 5]. In this declaratory-judgment action, Owners sues Burton and Ms. Williams, and in the underlying lawsuit, Ms. Williams only sues Burton. *See* [*id.*]. So, relying on *Owners Insurance Company v. Magic City Builders, Inc.*, No. 1:14-CV-3210-TWT, 2025 WL 3291968, at *4 (N.D. Ga. Nov. 25, 2025), Ms. Williams and Burton assert that Owners' argument is incorrect. [Doc. 23, pp. 7–13]; [Doc. 26, pp. 5–8]. That argument, put a little more simply, is that when an insurance policy (1) *requires timely notice* and (2) *further provides* a provision that <u>no action will lie against the insurer</u> "unless" the insured has complied with all policy terms, then timely notice is a condition precedent to coverage.[4] [Doc. 22, pp. 6–7]; [Doc. 27, p. 2]. Let's start first with the general rule in Georgia.

---

[4] While Owners points to the policy language stating: "No person or organization has a right under this Coverage Part . . . *[t]o sue us* . . . unless all of its terms have been fully complied with," Owners "is the plaintiff[] in this case." [Doc. 1-2, p. 159 (emphasis added)]; [Doc. 22-4, ¶ 3 (emphasis added)]; [Doc. 26, p. 5]. Rest assured, the Court understands Owners' argument that a "timely notice" provision "coupled with" a "no action will lie against the insurer" provision creates a condition precent to coverage, but its reliance on *Harp v. Fireman's Fund Insurance Company*, 61 S.E. 704 (Ga. 1908), somewhat clouds the real issue. [Doc. 22-1, p. 6]; [Doc. 27, pp. 2–3]. *Harp* dealt with a suit against *an insurance company*. 61 S.E. at 704–05. That's not at all what's going on here. Nevertheless, "[t]he meaning of the provision . . . referred to" in *Harp* was "that no suit could be commenced" against the insurance company "*until* there was a compliance with the requirement as to furnishing proofs of loss." *Id.* at 705 (emphasis added). In *Harp*, the Georgia Supreme Court also stated that "the policy would not be forfeited because of the [insured's] failure to furnish [proofs] within 60 days after the [loss]." *Id.* "Under this provision[,] time [was] not of the essence . . . as to the furnishing of proofs of loss." *Id.* The policy in *Hart* did "not provide that no suit can be maintained [against the insurance company] *unless* there is a full compliance with its requirements"—it did, however, "provide that no suit can be maintained [against the insurance company] *until* after a full compliance." *Id.* (emphasis added). Thus, *Harp* is irrelevant to Owners' "condition precedent" argument. If Owners was somehow being sued because of the drive-by shooting in this case, then *Harp* would come into play.

10

### A. *Magic City Builders* and Conditions Precedent

The Georgia Court of Appeals holds:

> [T]he general rule is that a notice provision in an insurance policy is only considered a condition precedent to coverage if "it expressly states that a failure to provide such notice will result in a forfeiture of the insured's rights or uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent."

*Plantation Pipeline Co. v. Stonewall Ins. Co.*, 780 S.E.2d 501, 511 (Ga. Ct. App. 2015) (quoting *Res. Life Ins. Co. v. Buckner*, 698 S.E.2d 19, 27 (Ga. Ct. App. 2010)). "This rule reflects the desire of the law to avoid forfeitures of an insured's rights." *Buckner*, 698 S.E.2d at 27 (citation omitted). So, under Georgia law, when policy language "does nothing more than require the insured to give notice of a particular event, [that language] is insufficient to create a condition precedent." *Id.* at 27–28 (citing *Canal Ins. Co. v. Savannah Bank and Tr. Co.*, 352 S.E.2d 835, 837–38 (Ga. Ct. App. 1987)).

Magic City Builders says just that. 2025 WL 3291968, at *4 (quoting *Buckner*, 698 S.E.2d at 27). *Magic City Builders* also says, "determining whether a notice provision is a condition precedent is not such a simple task" as courts applying Georgia law "appear to point in opposite directions." *Id.* In *Magic City Builders*, the court painstakingly analyzed several competing precedents. The plaintiff in *Magic City Builders*, which is coincidentally the same plaintiff in this case, Owners, pointed to two Georgia Court of Appeals decisions for the "position that the language of the notice provisions 'is sufficient, by itself, to state a valid condition precedent to coverage.'" 2025 WL 3291968,

at *4 (discussing *Kay-Lex Co. v. Essex Ins. Co.*, 649 S.E.2d 602, 607–07 (Ga. Ct. App. 2007); and *Forshee v. Emps. Mut. Cas. Co.*, 711 S.E.2d 28, 31 (Ga. Ct. App. 2011)). The *Magic City Builders* court also mentioned an unpublished opinion where the Eleventh Circuit aligned with Owners' contention—that the notice provisions were intended to be treated as conditions precedent to coverage. *Id.* (discussing *State Farm Fire & Cas. Co. v. LeBlanc*, 494 F. App'x 17, 21 (11th Cir. 2012)). Of course, the law is never easy, and the defendants in *Magic City Builders* pointed to a separate line of cases holding just the opposite. *Id.* at *5.

In *Magic City Builders,* the defendants—like Ms. Williams and Burton—point to *Plantation Pipeline* and *Buckner* for the same "general rule" laid out above, where that court found the defendants' "case law [to be] the better [understanding]" of that rule. *Id.* (quoting *Plantation Pipeline*, 780 S.E.2d at 511); *Buckner*, 698 S.E.2d at 27–28; *see also* [Doc. 23, pp. 8–9]; [Doc. 26, p. 6]. The court, in *Magic City Builders*, explained that the rule from *Plantation Pipeline*

> is traceable to a line of older insurance cases that held that violating an insurance provision cannot cause forfeiture of coverage unless coverage is expressly conditioned on compliance with that particular provision—i.e., the mere requirement that the insured provide certain notice is not sufficient to establish a condition precedent.

*Magic City Builders*, 2025 WL 3291968, at *5 (citing *Parris v. Great Cent. Ins. Co.*, 251 S.E.2d 109, 109–10 (Ga. Ct. App. 1978)); *see also Progressive Mut. Ins. Co. v. Burrell Motors, Inc.*, 143 S.E.2d 757, 759 (Ga. Ct. App. 1965); *Savannah Bank and Tr. Co.*, 352 S.E.2d at 837–38

("[A] mere failure to furnish [to the insurer] proper proofs of loss [within the period specified in the policy] will not work a forfeiture of the policy unless there is an express stipulation to that effect."). According to the court in *Magic City Builders*, the Georgia Court of Appeals, in these "older . . . cases," "required provision-specific conditional language based on the principle that '[f]orfeitures are not favored by the law.'" 2025 WL 3291968, at *5 (citing *Burrell Motors, Inc.*, 143 S.E.2d at 758); *Buckner*, 698 S.E.2d at 27 (citation omitted) (noting "the desire of the law to avoid forfeitures"); *see also Savannah Bank and Tr. Co.*, 352 S.E.2d at 837–38 ("There was no such express stipulation in the instant policy.").

So, in layman's terms, what does that mean? It means that the court in *Magic City Builders* ruled in favor of coverage. Specifically, the *Magic City Builders* court held where an insurance policy, no different than the one Owners issued to Burton in this case, merely requires notice in a "conditions" section—absent any express intention that "giving notice" *will be* a condition precedent to coverage—failure to give notice will not forfeit coverage. 2025 WL 3291968, at *5; *see, e.g.*, [Doc. 1-2, p. 159]. Now, whether *Magic City Builders* was correctly decided is a question for the Eleventh Circuit—and ultimately the Georgia Supreme Court. *Magic City Builders* is currently on appeal, and the "conditions precedent" issue—an issue about which "there are no clear controlling precedents in the appellate court decisions" from the State of Georgia—is perfectly primed for certification to the Georgia Supreme Court. *See King v. King*, 888 S.E.2d 166,

170 (Ga. 2023) (Warren, J., dissenting in part) (first quoting Georgia Supreme Court Rule 46; and then citing Ga. Const. of 1983, Art. VI, Sec. VI, Par. IV); *see also Magic City Builders*, 2025 WL 3291968, *appeal docketed*, No. 25-14277 (11th Cir. Dec. 8, 2025). Be it through certification by the Eleventh Circuit via *Magic City Builders* or via an appeal within a state-court case, what Georgia law requires for insurance policies regarding an insurer's and an insured's unambiguous intention to include a condition precedent in an insurance contract needs to be ironed out by Georgia's appellate courts.

Unless or until that happens, though, this Court will follow how the Eleventh Circuit interprets similar cases from Georgia's appellate courts. Owners' policy issued to Burton states: "You **must see to it** that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." [Doc. 22-4, ¶ 3 (emphasis added)]; [Doc. 1-2, p. 159 (emphasis added)]. In *Mt. Hawley Insurance Company v. East Perimeter Pointe Apartments* and *LeBlanc*, the Eleventh Circuit, applying Georgia law, held that notice provisions nearly identical to the one from the policy for this case triggered a condition precedent. *See, e.g.*, *Mt. Hawley Ins. Co.*, 861 F. App'x 270, 278 (11th Cir. 2021) (discussing policy language, "You must see to it that we are notified as soon as practicable of an 'occurrence' that may result in a claim or 'suit' under this policy"); *LeBlanc*, 494 F. App'x at 20 (discussing policy language, "If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit"). Contrary to the court's thorough analysis in *Magic City Builders*, the

14

Eleventh Circuit has noted that Georgia's appellate courts treat "you must see to it" language—standing alone—as a condition precedent. *LeBlanc*, 494 F. App'x at 21 (first citing *Forshee*, 711 S.E.2d at 30–31; and then citing *Kay-Lex*, 649 S.E.2d at 607–07). So, unless or until the Eleventh Circuit gets some guidance from the Georgia Supreme Court and the Georgia Supreme Court tells us differently, "[t]his language"—based on current Eleventh Circuit interpretations of Georgia case law—"clearly expresses the intention" that the policy's notice provision be treated as condition precedent to coverage. *Id.*

### B.    "Occurrence" and Notice

"It is settled under Georgia law that, when an insurance policy includes a notice requirement as a condition precedent to coverage, and when the insured unreasonably fails to timely comply with the notice requirement, the insurer is not obligated to provide a defense or coverage." *Forshee*, 711 S.E.2d at 31 (citing *Federated Mut. Ins. Co. v. Ownbey Enters., Inc.*, 627 S.E.2d 917, 919 (Ga. Ct. App. 2006)). Thus, summary judgment in favor of Owners is proper if (1) the drive-by shooting was an "occurrence" or "an offense which may result in a claim" and (2) Burton's delay in giving notice of the occurrence to Owners was "unjustified and unreasonable as a matter of law," thereby excusing Owners' duty to defend and provide coverage. *See State Farm Fire and Cas. Co. v. Walnut Ave. Partners, LLC*, 675 S.E.2d 534, 538 (Ga. Ct. App. 2009); [Doc. 22-4, ¶ 3]; [Doc. 1-2, p. 159].

To begin, Burton argues that the drive-by shooting was not an "occurrence" that triggered its duty to provide notice. [Doc. 26, p. 4]. Again, the policy defines an "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. 22-4, ¶ 4]; [Doc. 1-2, p. 162]. So, the policy says an occurrence is an "accident"—period. [Doc. 22-4, ¶ 4]; [Doc. 1-2, p. 162]. And, an "accident" *can be* one that concerns "continuous or repeated exposure to substantially the same general harmful conditions." [Doc. 22-4, ¶ 4]; [Doc. 1-2, p. 162]. But, if Burton is correct that the drive-by shooting wasn't an "occurrence" because it was an "isolated incident" involving "intentional conduct," then the shooting is not an "occurrence," and there is no resulting duty to defend or indemnify since the policy only covers "occurrences." [Doc. 26, p. 5].

Courts routinely recognize that a shooting, similar to the one here, is an occurrence. *See, e.g.*, *Mt. Hawley Ins. Co.*, 861 F. App'x at 278 (rejecting the argument that the insured's "delay in providing notice was justified because it 'was not aware of the existence of coverage'" after a shooting on the insured's premises); *Owners Ins. Co. v. Hawkins*, No. 1:22-CV-01265-JPB, 2023 WL 5733838, at *6 (N.D. Ga. Sept. 1, 2023) (rejecting the insured's argument "that it did not view the shooting as an 'occurrence' that required notice until . . . it received the letter of representation"); *Brit UW Ltd. v. Hallister Prop. Dev., LLC*, 6 F. Supp. 3d 1321, 1329 (N.D. Ga. 2014) (interpreting identical language and finding that the policy "expressly requires notice of any occurrence that

16

'may result in a claim'"); *Nationwide Prop. & Cas. Ins. Co. v. Sewell Vault & Monument, Inc.*, No. 3:11-CV-92, 2012 WL 13028694, at *5 (N.D. Ga. Feb. 13, 2012) ("[A]s a condition precedent to coverage, the policy required [the insured] to notify [the insurer] 'as soon as practicable of an "occurrence" . . . which may result in a claim.'"). Like these other courts, this one too, concludes that the policy language surrounding "occurrence" and when notice must be given for an "occurrence" is unambiguous. *Hawkins*, 2023 WL 5733838, at *6.

Next, when it comes to notice provisions, "[Georgia] law only requires an insured 'to act reasonably under the circumstances.'" *Forshee*, 711 S.E.2d at 31 (quoting *Guar. Nat. Ins. Co. v. Brock*, 474 S.E.2d 46, 48 (Ga. Ct. App. 1996)). In other words, notwithstanding the existence of a condition precedent, compliance with that condition may be excused if a court can determine as a matter of law that an insured's "actions" following an "occurrence" were reasonable. *See id.*

"Notice provisions . . . must be complied with" *unless* the insured can justify its noncompliance. *Mt. Hawley Ins. Co.*, 861 F. App'x at 277 (quoting *Plantation Pipeline*, 537 S.E.2d at 169). Long story short, that's what *this case* hinges on: Can Burton justify the fact that it did not provide Owners with notice of the drive-by shooting "as soon as practicable?" [Doc. 1-2, p. 159]; [Doc. 22-4, ¶ 3]. "[I]f a reasonable and ordinarily prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified and [there is] no bar to

coverage." *Forshee*, 711 S.E.2d at 31 (citing *Brock*, 474 S.E.2d at 48). "Whether [an] excuse or justification [is] sufficient and whether the insured acted diligently in giving the notice 'are generally questions of fact, to be determined by [a] jury, according to the nature and circumstances of each individual case.'" *Plantation Pipeline*, 537 S.E.2d at 167.

In the context of this case, Ms. Williams' son died on September 30, 2023, when "occupants of a white Ford F-150 drove by the [car wash] and began shooting, killing [him]." [Doc. 1, ¶ 12 (citing [Doc. 1-1, ¶ 6])]; [Doc. 22-4, ¶ 7]. Burton admits that it "first learned" of the shooting on the day it "had taken place." [Doc. 22-4, ¶ 7]; [Doc. 22-2, ¶ 10]; [Doc. 22-3, ¶ 8]. Ms. Williams filed the underlying "suit" on September 6, 2024. [Doc. 1-1, p. 2]; [Doc. 22-4, ¶ 5]. After being served with the underlying lawsuit on October 19, 2024, Burton notified Owners about the shooting on October 23, 2024—389 days (or one year and 23 days) from the date of the shooting, but only four days after it received the underlying lawsuit.[5] [Doc. 22-2, ¶ 11]; [Doc. 22-4, ¶ 8]. When Owners asked Burton the all-important question of why it didn't provide notice of the shooting until one year and 23 days after it happened, Burton replied:

> The shooting occurred in the public roadway, Millerfield Road, Macon, Georgia, not on [its] property, 1975 Millerfield Road. Because the shooting took place in the public roadway and not on [Burton's] property, and there was no prior history of substantially similar criminal activity, [Burton] did not believe that it was or could be held liable until it was served with the [underlying] lawsuit by [Ms.] Williams.

---

[5] On November 12, 2024, Owners issued a reservation of rights letter to Burton and is currently defending Burton in the underlying lawsuit subject to a complete reservation of rights. [Doc. 22-4, ¶ 9].

[Doc. 22-2, ¶ 13]; [Doc. 22-3, ¶ 9 (Burton's denial of its awareness of "substantially similar criminal activity occurring at or near the premises prior to September 30, 2023")]. Essentially arguing that this "excuse" doesn't cure Burton's late notice, Owners says it now has no duty to defend or indemnify Burton in the underlying lawsuit.

"Sometimes an event is so trivial or inconsequential that a court properly may conclude as a matter of law that no reasonable person would think that a claim could arise from the event and, therefore, that no notice of the event is required." *Forshee*, 711 S.E.2d at 31 (citing *S. Guar. Ins. Co. v. Miller*, 358 S.E.2d 611, 612 (Ga. Ct. App. 1987)). The Eleventh Circuit, however, has already decided that incidents involving "[m]urder and brutal assaults . . . are neither trivial nor inconsequential." *Mt. Hawley Ins. Co.*, 861 F. App'x at 268 (quoting *Forshee*, 711 S.E.2d at 31). Notwithstanding the Eleventh Circuit's seemingly automatic take on murders and brutal assaults, the Court recognizes the Georgia Court of Appeals insistence that courts look to "the nature and circumstances of 'the accident' or 'the incident' *and* the immediate conclusions an ordinarily prudent and reasonable person would draw therefrom that determine whether an insured has reasonably justified [its] decision not to notify the insurer." *Forshee*, 711 S.E.2d at 31 (citing *Miller*, 358 S.E.2d at 612) (emphasis added). In other words, the relevant inquiry is not necessarily one of "how severe the injury turned out to be." *See id.* at 32. Instead, the question is "how severe it would have *appeared* to a reasonable person in the position of the [insured]." *Id.* (emphasis added). In cases like this one, courts "must

make every effort to eliminate the distorting effects of hindsight and to evaluate the

conduct of the insured from the perspective of a reasonable person in the same

circumstances as those in which the insured found [it]self." *Id.*

At first glance, it seems as if the answer to the summary-judgment question

before the Court can easily be found in a 1996 decision from the Georgia Court of

Appeals with just a few simple substitutions related to the party's name, the type of

accident, and the legal theory asserted by the underlying lawsuit. *See Brock*, 474 S.E.2d

at 48. In *Brock*, three students, who were "alleged to be injured" in a collision involving

a school bus, filed separate lawsuits. *Id.* at 47. Each of their lawsuits named the bus

driver, the school district, and Brock—the school district's transportation supervisor—

as defendants. *Id.* Here is what the Georgia Court of Appeals said in *Brock*, and when

the Court changes the name, accident, and legal theory to fit this case, the answer seems

quite apparent.

> Under *Miller,* [Burton] was not required to foresee every possible claim, no
> matter how remote, that could have arisen from the [drive-by shooting].
> Rather, [Burton] was only required to act reasonably under the
> circumstances. Because [Burton] was not directly involved in the [drive-by
> shooting], we find that the trial court did not err in holding as a matter of
> law that it was not unreasonable for [Burton] to fail to foresee that he might
> be named in [the underlying] lawsuit[] arising from the [drive-by shooting]
> under a theory of negligent [security].

*Id.* (citing *Miller*, 358 S.E.2d at 612); *see also* [Doc. 1-1, pp. 4–10 (asserting causes of action

for "negligent security," "maintaining a nuisance," "injuries as a result of gang-related

violence," and "premises liability")]. Over time, however, case law develops. Enter

*Forshee* from 2011 where the Georgia Court of Appeals gave pretty clear guidance on what to look for when determining whether an insured is justified in its failure to give notice "as soon as practicable." 711 S.E.2d at 28; [Doc. 22-4, ¶ 3]; [Doc. 1-2, p. 159].

As briefly discussed above, *Forshee* first tells courts to look to "the nature and circumstances" of the incident. 711 S.E.2d at 31. Here, that's a death from a drive-by shooting at a car wash. [Doc. 22-4, ¶ 6]. Along with the nature of the incident, the Georgia Court of Appeals, in *Forshee*, says that "the immediate conclusions an ordinarily prudent and reasonable person would draw" from the incident must also be considered by courts when determining whether an insured's failure to give timely notice is justified. 711 S.E.2d at 31. Recent case law, however, has foreclosed much of the debate about shootings. Be they drive-by or on premises, shootings have been held to "invariably lead an ordinary policyholder to foresee the possibility of a claim warranting notice to [an] insurer." *Hawkins*, 2023 WL 5733838, at *7; *see also Jones*, 2025 WL 1839951, at *6 (holding that "[t]he nature of a shooting . . . warrant[s] notice to the insurer"); *Mt. Hawley Ins. Co.*, 861 F. App'x at 278 (holding that murder as a result of a shooting is "neither trivial nor inconsequential"). "Thus, the serious nature of [a drive-by shooting at a business] suggests that [an] insured would not be reasonably justified in failing to notify [its] insurer." *Jones*, 2025 WL 1839951, at *6.

*Forshee* also says that it's proper for courts to consider whether the person injured gave any "indication that [s]he intended to hold the insured responsible for the event

and resulting injuries and the extent to which the insured acknowledged the likelihood that a claim could arise from the event, either by offering compensation to the injured person or asking [her] to sign a release." 711 S.E.2d at 31–32. To be sure, until Ms. Williams served Burton with the underlying lawsuit, there was no "indication that [anyone] intended to hold [Burton] responsible for the [drive-by shooting] and resulting [death]." *Id.*; [Doc. 22-2, ¶ 11]. And, as far as the evidence shows, there's nothing to indicate that Burton offered any compensation to Ms. Williams following her son's death. Aside from "the nature and circumstances" of the incident and "the immediate conclusions an ordinarily prudent and reasonable person would draw" from the incident, the fact that there's no evidence of any offered compensation to Ms. Williams is the only consideration from *Forshee* that weighs in favor of Burton being justified in failing to give timely notice. 711 S.E.2d at 31–32.

However, "an insured cannot avoid the notice requirement by relying on its subjective belief that it has no liability." *Jones*, 2025 WL 1839951, at *7 (quoting *Allstate Ins. Co. v. Airport Mini Mall, LLC*, 265 F. Supp. 3d 1356, 1379 (N.D. Ga. 2017)). An insured may not withhold notice "based on its unilateral assessment of the liability issues arising from an occurrence." *Hawkins*, 2023 WL 5733838, at *8 (citing *Brit UW Ltd.*, 6 F. Supp. 3d at 1329). Georgia law is clear. "Justification for failure to give notice as soon as practicable . . . may not include the insured's conclusion that [it] was free of fault and that there was no liability to the other party." *Richmond v. Ga. Farm Bureau*

*Mut. Ins. Co.*, 231 S.E.2d 245, 249 (Ga. Ct. App. 1976). "That is the very issue." *Id.*

Insurance companies "must have [the] reasonable opportunity to investigate with

promptness, and [that] requires . . . prompt notice of the occurrence"—or "as soon as

practicable" as is the case here. *Id.* (citing *Bituminous Cas. Corp. v. J. B. Forrest Etc., Inc.*,

20. S.E.2d 6, 9 (Ga. Ct. App. 1974)); [Doc. 22-4, ¶ 3]; [Doc. 1-2, pp. 159]. As Owners

contends,

> [t]he purpose of [a notice] requirement is obvious: to enable the insurer to
> begin immediately an investigation of the facts and circumstances for
> determining whether liability might be present and whether a settlement of
> the claim should be attempted; to get the facts while they [are] fresh and
> available in the minds of the parties and such witnesses as might be
> available; [and] to obtain pictures . . . which might assist in showing how
> the occurrence happened and the extent of any physical damage done.

[Doc. 27, pp. 6–7 (citing *Bituminous Cas. Corp.*, 20 S.E.2d at 8–9)].

Here, Burton is adamant that it "did not believe that it was or could be held

liable [for the drive-by shooting] until it was served with the [underlying] lawsuit by

[Ms.] Williams." [Doc. 22-2, ¶ 13]; [Doc. 22-3, ¶ 9 (Burton's denial of its awareness of

"substantially similar criminal activity occurring at or near the premises prior to

September 30, 2023")]. But, misplaced confidence that an insured won't have any

liability never excuses its contractual obligations under an insurance policy. *Mt. Hawley

Ins. Co. v. E. Perimeter Pointe Apartments, LP*, 409 F. Supp. 3d 1319, 1331 (N.D. Ga. 2019)

(quoting *Allstate Ins. Co. v. Walker*, 562 S.E.2d 267, 268 (Ga. Ct. App. 2002)), *aff'd*, 861 F.

App'x at 278; *Bituminous Cas. Corp.*, 20 S.E.2d at 8 ("The insured was bound by the

contract provisions of the policy to give 'written notice . . . and this he was required to do 'as soon as practicable.'").

An insured's duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the offense in question. *Forshee*, 711 S.E.2d at 31. Considering the nature of the incident and "the immediate conclusions an ordinarily prudent and reasonable person would draw" from it, current and relevant case law lends to the conclusion that Burton "should have known of the possibility that it might be held liable" since a customer at its car wash died on its property as a result of a drive-by shooting. *Id.*; *Jones*, 2025 WL 1839951, at *6 (discussing that even when considering the circumstances as a drive-by shooting, "the 'ordinary policyholder' would recognize that the shooting death of an individual on the property owned or managed by the policyholder could possibly lead to a claim") (citing *Hawkins*, 2023 WL 5733838, at *7).

Since the length of delay in this case—one year and 23 days—is unreasonable as a matter of law, the undisputed facts show that Burton breached a condition precedent to coverage by failing to provide notice "as soon as practicable." *LeBlanc*, 494 F. App'x at 23 ("Georgia courts have held that a delay of as little as three months between the filing of a lawsuit and notice to the insurer is unreasonable as a matter of law.") (citing *Diggs v. S. Ins. Co.*, 321 S.E.2d 792, 793 (Ga. Ct. App. 1984)); [Doc. 22-4, ¶ 3]; [Doc. 1-2, p. 159]. "Georgia case law is quite settled." *Mt. Hawley Ins. Co.*, 861 F. App'x at 275. "Insurance

companies aren't obligated to defend an insured or provide coverage if the insured unreasonably failed to comply with a conditional notice requirement." *Id.*

<u>CONCLUSION</u>

For the reasons discussed above, the Court **GRANTS** Owners' Motion for Summary Judgment [Doc. 22], and it **DECLARES** that Owners has no duty to defend or indemnify Burton in the underlying lawsuit or any claim or judgment arising therefrom. The Court **DIRECTS** the Clerk of Court to **ENTER** judgment accordingly and **CLOSE** this case.

**SO ORDERED**, this 15th day of January, 2026.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**